CECILIA LEE, LTD.
CECILIA LEE, ESQ.
Nevada Bar No. 3344
448 Ridge Street
Reno, Nevada 89501
Telephone (775) 324-1011
Facsimile (775) 324-0113
Email: c.lee@cecilialee.net

Electronically Filed January 8, 2014

Attorney for Trustee Allen M. Dutra

## UNITED STATES BANKRUPTCY COURT

## FOR THE DISTRICT OF NEVADA

In re:

DARRELL & LISA MICHELLE PLUMMER,

          Debtors.

Case No. BK-N-12-52644-BTB

Chapter 7 Case

**MOTION TO APPROVE COMPROMISE, OR, IN THE ALTERNATIVE, MOTION TO SELL PROPERTY OF THE ESTATE FREE AND CLEAR OF LIENS, CLAIMS AND ENCUMBRANCES**

Hearing Date:   February 11, 2014
Hearing Time:   2:00 p.m.

Pursuant to 11 U.S.C. §323 and Fed. R. Bankr. Pro. 9019, Chapter 7 Trustee Allen M. Dutra (the "Trustee"), by and through his attorney, Cecilia Lee, Esq., asks the Court to enter an order approving a compromise between the Trustee and Darrell Plummer and Lisa Plummer (the "Debtors") arising from Debtors' ownership interest in CBPA Moves You, LLC ("CBPA").  A copy of the Settlement and Release Agreement (the "Agreement") is attached hereto as Exhibit A.  In this Motion, the Trustee requests that the Court enter an order approving the terms of the Agreement in their entirety.  Approval of the terms will include (1) that the Trustee is authorized to convey and release to the Debtors any and all interest in CBPA and CBPA's ownership interest in (a) 2004 Ford F-350 Super Duty Box Truck (VIN 1FDWE35L6HA49643); (b) 2004 Ford F-350 Super Duty Box Truck (VIN 1FDWE35L84HA49644); and (c) 2005 Ford F-350

Super Duty Class 3 Box Truck (VIN 1FDWE35L15HB08034) (the "Moving Trucks") free and clear of any liens, claims and encumbrances; (2) that the Trustee is authorized to release to the Debtors any and all interest of the estate in the Internal Revenue Service tax refund garnished by the Small Business Administration and Department of Treasury on or about June 28, 2013; and (3) that the settlement consideration of $26,000 is to be administered as property of the estate.

In the alternative to approval of the Agreement as a compromise, the Trustee asks the Court to approve the Agreement as a sale of assets by the estate to the Debtors, free and clear of liens and encumbrances, for $26,000.00.

In support of this motion, the Trustee submits the <u>Declaration Of Allen Dutra In Support Of Motion To Approve Compromise, Or, In The Alternative, Motion To Sell Property Of The Estate Free And Clear Of Liens, Claims And Encumbrances</u> (the "Dutra Declaration"), the following memorandum of points and authorities, the attached exhibits, and the papers and pleadings on file in this case, of which the Trustee asks the Court to take judicial notice. Fed. R. Evid. 201.

## I.    STATEMENT OF FACTS

1.    On November 21, 2012, Debtors filed their voluntary petition under Chapter 7 of the Bankruptcy Code. Docket No. 1. On the same day, Allen M. Dutra was appointed as Chapter 7 Trustee. Docket No. 6.

2.    In their schedules, the Debtors list a 100% percentage ownership interest in CBPA, a Nevada limited liability company (the "Membership Interest"). Docket No. 1. As such, the Membership Interest is an asset of this estate. The Debtor listed the value of the Debtor's Membership Interest as $0.00. Docket No. 1.

3.    On December 27, 2012, at the first meeting of creditors convened by the Trustee, the Debtors disclosed that CBPA is the title owner and in possession of the Moving Trucks.

4.    In correspondence dated June 28, 2013 from the Department of Treasury, the Debtors were notified that the Debtors that the Small Business Administration had offset a tax refund of $9,197.00 for tax year 2012. Approximately 11/12 of the tax refund, or approximately $8,400.00, would have been property of the estate. A copy of the June 28, 2013 letter from the

Department of Treasury is attached hereto as <u>Exhibit B</u>.

5.      In a letter dated August 21, 2013, a copy of which is attached hereto as <u>Exhibit C</u>, the Debtors requested that the Small Business Administration refund the tax offset to the Trustee. The Trustee is informed that no response was made to the August 21, 2013 letter other than an instruction for Debtors' counsel to contact another agency with a power of attorney and try to discuss the issue further with that agency.  In the Trustee's experience, recovery of tax offsets is problematic and a costly endeavor.  <u>Dutra Declaration</u>.

6.      The Debtors also listed an interest in Plummer & Associates, Inc., a Nevada corporation.  The Debtors have represented to the Trustee that the debt owed by Plummer & Associates is vastly in excess of any value the Debtors have in that entity and that the entity will be dissolved in accordance with state law, with the relatively nominal funds used to pay its creditors proportionately.

7.      The Debtors provided appraisals of the Moving Trucks to the Trustee of approximately $39,000 in total.  The Debtors contend that the Moving Trucks have decals and advertising on them that renders the value significantly less than the appraised value.

8.      The Debtors further contend that Plummer & Associates has a claim against the Moving Trucks for funds advanced in connection with them.

9.      In resolution of all of these issues, the Debtors and the Trustee entered into the Agreement.  <u>Exhibit A</u>.  In summary, the Agreement provides that the parties will compromise all of the outstanding issues between them for the Debtors' payment of $26,000 to the estate. The Trustee has received these funds.  <u>Dutra Declaration</u>.  The Trustee will release to the Debtors all of the estate's interest in the Membership Interest and CBPA's continued possession, ownership and title to the Moving Vehicles, free and clear of all liens, claims and encumbrances. The Trustee will also release all of the estate's interest in the offset tax refund.  The section 341 meeting of creditors will be concluded and the Trustee will allow the Debtors' discharge to be entered.

10.     The Agreement provides that it is subject to this Court's approval.

/ / /

# II     LEGAL DISCUSSION

## 1.  **The Agreement Should be Approved.**

Compromises are favored under the Bankruptcy Code, and approval of a compromise rests on the sound discretion of the Court.  Protective Committee for Independent Stockholders of TMT Trailer Ferry Inc. v. Anderson, 390 U.S. 414, 424 (1968), reh den. 392 U.S. 909, 20 L. Ed. 2d 425, 88 S. Ct. 1157 (1968); In re A & C Properties, 784 F.2d 1377, 1380-81 (9th Cir. 1986), rev'd on other grounds, In re Washington Public Power Supply System Sec. Litigation, 823 F.2d 1349 (9th Cir. 1987); cited with approval, Arden v. Motel Partners, 176 F.3d 1226, 1228 (9th Cir. 1999).  The approval of a compromise is governed by Fed. R. Bankr. Pro. 9019(a), which states:

> On motion by the Trustee and after notice and a hearing, the Court may approve a compromise or settlement.  Notice shall be given to creditors, the United States Trustee, the debtor, and indenture Trustees as provided in Rule 2002 and to any other entity as the Court may direct.

The decision to approve or disapprove a compromise rests on the sound discretion of the Bankruptcy Court.  See In re Stein, 236 B.R. 34, 37 (Bankr. D. Or. 1999). The law favors compromise "as long as the bankruptcy Court amply considered the various factors that determined the reasonableness of the compromise."  In re A&C Properties, 784 F.2d at 1382. If the compromise is fair and equitable and in the best interests of creditors, the Court may approve the compromise.  TMT Trailer Ferry, 390 U.S. at 424; Jacobson v. Robert Speece Properties, Inc., 159 B.R. 314, 317 (Bankr. E.D. Cal. 1993); Bankruptcy Receivables Mgmt. V. DeArmond, 240 B.R. 51, 56 (Bankr. C.D. Cal. 1999).

The Ninth Circuit Court of Appeals has held that

> in order to determine whether a proposed settlement is fair and equitable, the bankruptcy Court must consider four factors: (a) The probability of success in litigation; (b) the difficulties, if any, to be encountered in the matter of collection; (c) the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it; and (d) the paramount interest of the creditors and a proper deference to their reasonable views in the premises.

1    <u>A & C Properties</u>, 784 F.2d at 1381; <u>Arden</u>, 176 F.3d at 1228; <u>see also</u> <u>Schmitt v. Ulrich</u>, 215

2    B.R. 417, 421 (9th Cir. BAP 1997).  The Trustee is not necessarily required to satisfy each of

3    these factors as long as the factors as a whole favor approving the settlement.  <u>See In re Pacific</u>

4    <u>Gas and Electric Co.</u>, 304 B.$. 395, 416 (Bankr. N.D. Cal. 2004); <u>In re WCI Cable, Inc.</u>, 282

5    B.R. 457, 473-74 (Bankr. D. Or. 2002).  However, the settlement agreement does not have to be

6    the best the debtor could have possibly obtained; it must only fall "within the reasonable range of

7    litigation possibilities."  <u>In re Adelphia Comm. Corp.</u>, 327 B.R. 143, 159 (Bankr. S.D.N.Y. 2005)

8    (citing <u>In re Penn Cent. Transp. Co.</u>, 596 F.2d 1102, 1114 (3d Cir. 1979) for the proposition that

9    the Court may approve a settlement even if it believes the Trustee would ultimately be

10    successful).

11          As set forth below, the agreement comports with these standards, is fair and reasonable,

12    and is in the best interests of the creditors.

13    **2.  <u>Probability of Success in Litigation.</u>**

14          Debtors' property interests in CBPA, a limited liability company, including without

15    limitation the economic interest in the membership of the limited liability company as well as the

16    non-economic interest in the entity, such as the right to vote, direct management and the like, are

17    property of the estate and subject to the Trustee's administration.  <u>See, In re First Protection</u>, 440

18    B.R. 821 (9th Cir. BAP 2010); <u>In re Albright</u>, 291 B.R. 538 (Bankr. D. Colo. 2003) (single

19    member LLC interest became property of the estate including the right to control management);

20    <u>In re Garrison–Ashburn, LC</u>, 253 B.R. 700 (Bankr. E.D. Va. 2000) (debtor's 50 percent

21    membership interest became property of the estate, including the non-economic right of

22    management); <u>In re A-Z Electronics, LLC</u>, 350 B.R. 886 (Bankr. D. Idaho 2006) (debtor's voting

23    or other management rights belong to the trustee so that the debtor lacked authority to place LLC

24    in its own chapter 11 bankruptcy).

25          Thus, the Trustee takes the position that he is entitled to sell, lease or assign the

26    membership interest in CBPA in accordance with 11 U.S.C. §363 and that he is further entitled

27    / / /

28

to sell any property owned by CBPA, including the Moving Trucks.[1]

However, the Debtors have asserted that their insolvent corporation, Plummer and Associates, has a claim against the Moving Trucks that would be payable upon sale. They further assert that the decals and other advertising on the Moving Trucks affect the price that could be obtained on sale.

Moreover, the Trustee's experience with offset of federal tax refunds strongly indicates that undoing the SBA's offset will be both problematic and costly.

As such, the Trustee submits that the estate has risk if the Trustee were to expend funds to pursue the tax refund and the sale of the Moving Trucks. The Trustee submits that the Agreement adequately assesses the risks by providing $26,000 to the estate for the transfer of the CBPA Membership Interest which the Debtors valued at zero and release of the Moving Trucks and the tax refund to the Debtors. Thus, this factor weighs in favor of approving the Agreement.

**3.  Difficulties in Collection of a Judgment.**

This factor does not figure significantly in the analysis

**4.  Complexity of the Litigation.**

This factor is neutral to the analysis.

**5.  Interests of Creditors.**

The fourth and final factor for the Court to consider in ruling on a motion to compromise is the interests of creditors. This factor weighs strongly in favor of approving the Agreement. The economics of the settlement favor the estate. The Trustee resolves all issues with the Debtors, eliminates the cost and risk of litigating Plummer and Associates' claim against the Moving Vehicles, eliminates the cost and risk of pursuing the tax refund, and allows the Trustee to close the estate and pay creditors. Moreover, litigation always entails the prospect of appeal, thereby adding at least one additional layer of cost, time and risk.

In contrast, the Agreement resolves all of these issues. The estate receives $26,000, avoids the risks inherent in litigation, and minimizes the costs to the estate. These considerations

---

[1] The Trustee does not take any position in this Motion as to whether the sale of property of CBPA may be accomplished without approval by this Court.

Cecilia Lee, Ltd.
448 Ridge Street
Reno, NV 89501
(775) 324-1011
(775) 324-0113

urge the propriety of the Agreement.

**6.  In the Alternative, the Trustee Asks the Court to Approve the Sale of Property Free and Clear of Liens, Claims and Encumbrances**

In In re Mickey Thompson, 292 B.R. 415 (9th Cir. BAP 2003), the Court held that the Bankruptcy Court may, but is not always required to impose formal sale procedures in connection with a hearing on a motion to compromise.  In Mickey Thompson, the Trustee did not clearly represent to the Court whether the agreement was a "compromise" or a "sale of assets".  Because the Trustee was not clear, the Court scrutinized the transaction and found that, because there was no release of claims against the estate, the transaction was a straight sale.  The competitive overbidding did not apply.

In the event the Court determines that the sale procedures apply to the Agreement, the Trustee submits the following discussion to support entry of an order approving the same.

Section 363(b) of the Bankruptcy Code provides that "[t]he trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. §363(b).  The standard for approval of a sale of property of the estate under Section 363 is whether there exists some articulated business justification for the proposed transaction, and whether the sale is in the best interests of the debtor, creditors and equity holders.  Walter v. Sunwest Bank, 83 B.R. 14, 19 (9th Cir. BAP 1988) (quoting Institutional Creditors of Continentail Airlines, Inc., 780 F.2d 1223, 1226 (5th Cir. 1986).  In making such a determination, courts may look to the following factors:

(a)     Whether the assets are increasing or decreasing in value;

(b)     Whether the proposed sale will effectuate a *de facto* reorganization;

(c)     Whether the assets have been given adequate marketing; and

(d)     Whether adequate and reasonable notice of the sale was given.

In re Work Recovery, Inc., 202 B.R. 301, 303-04 (Bankr. D. Ariz. 1996); In re Wilde Horse Enterprises, Inc., 136 B.R. 830, 841 (Bankr. C.D. Cal. 1991).

Rule 6004(f) of the Federal Rules of Bankruptcy Procedure ("Bankruptcy Rules") provides that "[a]ll sales not in the ordinary course of business may be by private sale or by

public auction." Fed. R. Bankr. Pro. 6004(f)(1).  A trustee has broad discretion in determining the manner of sale, including whether to sell property by public or private sale.  In re Frezzo, 217 B.R. 985, 989 (Bankr. M.D. Penn. 1988) (citing In re Canyon Partnership, 55 B.R. 520, 524 (Bankr. S.D. Cal. 1986).

Bankruptcy Rule 2002(c)(1) provides that "[n]otice of a proposed use, sale or lease of property …. shall include the time and place of any public sale, the terms and conditions of any private sale and the time fixed for filing objections."  The Notice of Hearing provides all of this information.

In this case, the sale will be a private sale to the Debtors.  At this time, the Membership Interest in CBPA does not appear to be increasing or decreasing in value.  The primary assets of the CBPA consist of the Moving Trucks.  As represented in the Agreement, the Moving Trucks may be subject to third party claims and there is no reasonable expectation that such will change in the foreseeable future.  The Membership Interest has no known market.

Further, the proposed sale will not effectuate a *de facto* reorganization.  This is a chapter 7 case with no reorganization contemplated or possible.  Rather, the sale of the Membership Interest will enable the Trustee to further the liquidation process and pay the Estate's creditors.

Finally, adequate and reasonable notice of this sale has been given.  The Motion will be duly noticed to the Debtors' known creditors.  Importantly, the Notice sets forth the proposed sale of the Membership Interest, the time and place of the hearing, the terms and conditions of the sale and the time fixed for filing objections.  Bankruptcy Rule 2002(c)(1).

Thus, this sale meets the requirements of section 363 because the above factors have been met.  This sale is in the best interests of the estate.

The sale will be "as is, where is" and without any warranties.  The Trustee also asks the Court to make a finding pursuant to 11 U.S.C. §363(m), which provides:

> [t]he reversal or modification on appeal of an authorization under subsection (b) or (c) of this section of a sale or lease of property does not affect the validity of a sale or lease under such authorization to an entity that purchased or leased such property in good faith, whether or not such entity knew of the pendency of the appeal, unless such authorization and such sale or lease were

stayed pending appeal.

The Bankruptcy Code does not define "good faith purchaser."  However, the Ninth Circuit Bankruptcy Appellate Panel defined a "good faith purchaser" as one who buys in good faith and for value.  As a corollary, lack of good faith is found when there is fraud, collusion between the purchaser and other bidders or the trustee or a "grossly" unfair advantage over the other bidders.  In re M Capital Corp., 290 B.R. 743, 746-47 (9th Cir. BAP 2003).  Lack of good faith is, thus, determined by fraudulent conduct during the sale proceedings.  In re Exennium, 715 F.2d 1401, 1404-05 (9th Cir. 1983); In re Thomas, 287 B.R. 782, 785-86 (9th Cir. BAP 2002).  Because there is no known market for the Membership Interest but sale is still subject to overbids during this Court's approval process, the Trustee anticipates that no fraudulent conduct would mire the proceedings, thus meriting a finding pursuant to §363(m).

Moreover, Fed. R. Bankr. Pro. 6004(h) also provides that "[a]n order authorizing the use, sale or lease of property other than cash collateral is stayed until the expiration of 14 days after entry of the order, unless the court orders otherwise."   The Trustee asks that the Court order that the sale of the Property is not stayed pursuant to Fed. R. Bankr. Pro. 6004(h).  Particularly in light of the fact that there is no known market for the Membership Interest and there will be the opportunity for overbids during the approval process, a 14 day stay for the order approving this Motion is unnecessary.

Finally, according to 11 U.S.C. §363(f),

> [t]he trustee may sell property under subsection (b) or (c) of this section free and clear of any interest in such property of an entity other than the estate, only if –
>
> > (1)  applicable nonbankruptcy law permits sale of such property free and clear of such interest;
> >
> > (2)  such entity consents;
> >
> > (3)  such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property;
> >
> > (4)  such interest is in bona fide dispute; or

(5) such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.

Here, the requirements of all applicable bankruptcy code sections have been satisfied. There is no entity, other than the estate, that has an interest in the property. The Trustee believes that there is sufficient justification for the sale of the Membership Interest to the Debtors and that the sale is in the best interests of creditors and the estate.

On these grounds, in the event the Court determines that the Agreement is subject to approval in accordance with the sale procedures of the Bankruptcy Code, the Trustee asks the Court to approve the portion of the Motion seeking authority to sell the Property free and clear of liens, claims and encumbrances with the proceeds of such sale to be included in the assets used to pay the Debtors' creditors. The Trustee further requests that the Order approving this Motion include that the sale be approved pursuant to Section 363(m) and that the order approving this Motion not be stayed pursuant to Fed. R. Bank. Pro. 6004(h).

### III    CONCLUSION

For these reasons, the Trustee asks the Court to GRANT this Motion in its entirety.

DATED this 8th day of January, 2014.

CECILIA LEE, LTD.

/s/ Cecilia Lee, Esq.
CECILIA LEE, ESQ.

Cecilia Lee, Ltd.
448 Ridge Street
Reno, NV 89501
(775) 324-1011
(775) 324-0113

EXHIBIT A

## SETTLEMENT AND RELEASE AGREEMENT

This Settlement And Release Agreement (this "Agreement") is made and entered into effective December 16, 2013 (the "Effective Date") by and among Darrell and Lisa Plummer ("Plummers" or "Debtors") and Allen Dutra, solely in his capacity as Chapter 7 Trustee ("Trustee") for the Plummer Estate ("Estate"). Collectively, the Plummers and Trustee may be referred to as the "Parties," or individually, each a "Party").

### RECITALS

A.       On November 21, 2012, the Plummers filed a Voluntary Petition for relief under Chapter 7 (the "Chapter 7") of the United States Bankruptcy Code (the "Code"). *See* [Docket No. 1]. The Plummer's Chapter 7 is pending as Bankruptcy Case Number BK-N-12-52644-BTB (the "Bankruptcy Case") in the United States Bankruptcy Court, District of Nevada (the "Bankruptcy Court").

B.       The Plummers are the 100% sole members and managers of CBPA Moves You, LLC ("CBPA") which ownership interest was disclosed in the Plummer's Schedule B attached to their Voluntary Petition. *See* [Docket No. 1 at p. 17 of 53].

C.       On December 27, 2012, at the first meeting of creditors convened by the Trustee, the Plummers disclosed that CBPA was the title owner and in possession of the following moving vehicles: (1) 2004 Ford F-350 Super Duty Box Truck (VIN 1FDWE35L6HA49643); (2) 2004 Ford F-350 Super Duty Box Truck (VIN 1FDWE35L84HA49644); and (3) 2005 Ford F-350 Super Duty Class 3 Box Truck (VIN 1FDWE35L15HB08034) (the "Moving Trucks").

D.       The Plummers contend that the Moving Trucks are subject to third party claims. The Plummers also contend that the Moving Trucks are not property of the Estate and that Trustee is unable to force a sale of the Moving Trucks.

E.       The Trustee requires that the Moving Trucks be turned over to the estate free and clear of all liens, claims and encumbrances. The Trustee also contends that, by virtue of the estate's ownership of the Debtors' membership interest (including without limitation, the Debtors' economic and noneconomic interests) in CBPA, the Moving Trucks are property of the estate and/or the Moving Trucks can be sold by the Trustee with or without approval of the Bankruptcy Court.

F.       Disputes remain among the Parties with respect to the above and it is therefore the intention of the parties to resolve all of these disputes with this Agreement.

Now, therefore, in consideration of the mutual covenants, agreements, understandings, undertakings, representations, warranties and promises, and subject to the conditions set forth herein, and intending to be legally bound thereby, the Parties do hereby covenant and agree that the recitals set forth above are true and accurate and are hereby incorporated in and made a part of this Agreement, and further covenant and agree as follows:

### AGREEMENT

1.       Settlement.

a.       The Plummers will cause to deliver in good and sufficient funds Twenty-Six Thousand and no/100 Dollars ($26,000.00) (the "Settlement Payment") to the Trustee on or before January 11, 2014 in exchange for CBPA's continued possession, ownership and title to the Moving

Vehicles, free and clear of all liens, claims and encumbrances.

        b.     The Trustee will convey to the Debtors the Estate's interest in: (i) CBPA; and (ii) the Internal Revenue Service ("IRS") tax refund garnished by the Small Business Administration ("SBA") and Department of Treasury ("DOT") on or about June 28, 2013.

        c.     The Trustee will allow the Plummers' discharge to be entered, the 341 meeting of creditors will be concluded and all claims the Trustee may have against the Plummers will be released as fully set forth in paragraph 2 below.

        d.     This Agreement is subject to Bankruptcy Court approval and becomes fully enforceable upon entry of a final, non-appealable order (where no stay is in effect preventing the order from becoming enforceable) in the Bankruptcy Case ("Final Order"). In the event the Parties are unable to achieve a Final Order in the Bankruptcy Case, the Trustee will return the Plummer's Settlement Payment within 30 days of written demand to the Notice address set forth below (minus applicable bank charges).

        2.     Releases

        a.     <u>Release by the Trustee</u>.  Upon entry of a Final Order approving this Agreement, Trustee hereby fully releases and discharges the Plummers and their respective heirs, affiliates, successors and assigns and their respective officers, directors, managers, members, stockholders, employees, representatives, agents, attorneys and professional advisors (in their individual and representative capacities) of and from all manner of action or actions, cause or causes of action, suits, judgments, demands, rights, debts, agreements, promises, liabilities, losses, damages (whether general, special or punitive), attorneys' fees (whether incurred prior to or after the Effective Date), liens, indemnities, costs and expenses, of every nature, character, description and amount, without limitation or exception, whether known or unknown, suspected or unsuspected, whether based on theories of contract, breach of contract, breach of the covenant of good faith and fair dealing, tort, violation of statute or ordinance, or equitable theory of recovery, or any other theory of liability or declaration of rights whatsoever as of the Effective Date (the "Debtors' Claims").

        b.     <u>Release by the Debtors</u>.  Upon entry of a Final Order approving this Agreement, the Debtors hereby fully release and discharge the Trustee, the estate and his respective heirs, affiliates, successors and assigns and his respective officers, directors, managers, members, stockholders, employees, representatives, agents, attorneys and professional advisors (in their individual and representative capacities) of and from all manner of action or actions, cause or causes of action, suits, judgments, demands, rights, debts, agreements, promises, liabilities, losses, damages (whether general, special or punitive), attorneys' fees (whether incurred prior to or after the Effective Date), liens, indemnities, costs and expenses, of every nature, character, description and amount, without limitation or exception, whether known or unknown, suspected or unsuspected, whether based on theories of contract, breach of contract, breach of the covenant of good faith and fair dealing, tort, violation of statute or ordinance, or equitable theory of recovery, or any other theory of liability or declaration of rights whatsoever as of the Effective Date (the "Trustees' Claims" and, together with the Debtors' Claims, referred to as the "Claims").

        3.     <u>Compromise of Claims</u>.  The Parties, and each of them, acknowledge that they may hereafter discover facts different from, or in addition to, those facts that they now believe to be true with respect to any and all of the Claims released. Nevertheless, the Parties, and each of them, hereby agree that the releases set forth in Sections 2 above shall be and remain effective in all respects pursuant to the terms and conditions of this Agreement, notwithstanding the discovery of such different or

232419.1            — 2 —

additional facts.  To that end, the Parties specifically and voluntarily waive any statutory or legal right, rule, decision or doctrine limiting the scope of the releases to include only Claims known or suspected by the Parties as of the Effective Date, regardless of whether any unknown or unsuspected Claims would have materially affected the Parties' decision to enter into this Agreement.  Notwithstanding anything to the contrary contained in Section 2, the Parties do not release one another from their respective duties, obligations and liabilities under this Agreement, the agreements contemplated hereby, or from matters arising after the Effective Date.   Each Party expressly reserves all of its rights and remedies with respect to the performance of this Agreement of the other parties hereto.

        4.     <u>Independent Counsel</u>.  The Parties represent and warrant that they have been advised that they should be represented by counsel of their own choosing in the preparation and analysis of this Agreement, that they have been represented by their own independent counsel and that they have read this Agreement and believe that they are fully aware of and understand the contents hereof and its legal effect.   The Parties further represent and warrant that they have entered into this Agreement voluntarily and with the approval and advice of their counsel.

        5.     <u>Representations and Warranties</u>.  Each Party hereby represents and warrants to the other Party as follows, which shall be true and accurate as of the Effective Date:

        a.     The Party has the power and authority to enter into this Agreement and to carry out its obligations hereunder.  The Trustee's representation is dependent on entry of a Final Order approving this Agreement.

        b.     This Agreement has been duly executed and delivered by the Party and constitutes a legal, valid and binding obligation of the Party and, assuming this Agreement constitutes a legal, valid and binding obligation of the other Parties, is enforceable against the Party in accordance with its terms.  The Trustee's representation is dependent on entry of a Final Order approving this Agreement.

        c.     The execution and delivery of this Agreement does not, and the performance of this Agreement will not: (i) conflict with or violate any law, rule, regulation, order, judgment or decree applicable to the Party or by which the Party and its assets are bound or affected; or (ii) result in any material breach of or constitute a material default (or an event that with notice or lapse of time or both would become a material default) under, or impair the rights of the Party or alter the rights or obligations of any third party under, or give to others any rights of termination, amendment, acceleration or cancellation of, or result in the creation of a material encumbrance on any of the material properties or assets of the Party pursuant to, any note, bond, mortgage, indenture, contract, agreement, lease, license, permit, franchise, concession, or other instrument or obligation to which the Party is a party or by which the Party or its assets are bound or affected.  The Trustee's representation is dependent on entry of a Final Order approving this Agreement.

        6.     <u>Time of the Essence</u>.  Time is of the essence of this Agreement, and in all the terms, provisions, covenants and conditions hereof.

        7.     <u>Miscellaneous</u>.

        a.     <u>Survival</u>.  All representations, warranties and covenants and agreements of the Parties contained in this Agreement, or in any other instrument or other writing provided for herein, shall survive the execution and delivery of this Agreement.

232419.1         — 3 —

     b.    <u>Applicable Law and Venue</u>.  This Agreement shall, in all respects, be governed by the laws of the State of Nevada applicable to agreements executed and to be wholly performed within Nevada and any action or proceeding filed, instituted or initiated to enforce, construe, or challenge this Agreement or any of the terms contained herein may only be filed or initiated in the Bankruptcy Court.

     c.    <u>Severability</u>.  If any provision of this Agreement, or any portion of any provision, shall be deemed invalid or unenforceable by a court of competent jurisdiction for any reason whatsoever, such invalidity or unenforceability shall not affect the enforceability and validity of the remaining provisions hereof.

     d.    <u>Further Assurances</u>.  Each of the Parties shall execute and deliver any and all additional papers, documents and other assurances, and shall do any and all acts and things reasonably necessary in connection with the performance of their obligations hereunder to carry out the intent of the Parties.

     e.    <u>Modifications or Amendments</u>.  No amendment, change or modification of this Agreement shall be valid, unless in writing and signed by all of the Parties.

     f.    <u>Successors and Assigns</u>.  All of the terms and provisions contained herein shall inure to the benefit of and shall be binding upon the Parties and their respective heirs, legal representatives, successors and assigns.

     g.    <u>Entire Agreement</u>.  This Agreement constitutes the entire understanding and agreement of the Parties with respect to its subject matter and any and all prior agreements, understanding or representations with respect to its subject matter are hereby terminated and canceled in their entirety and are of no further force or effect.

     h.    <u>Non-Waiver</u>.  No waiver by any Party hereto of a breach of any provision of this Agreement shall constitute a waiver of any preceding or succeeding breach of the same or any other provision hereof.

     i.    <u>Counterparts</u>.  This Agreement may be executed in two or more counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument.

     j.    <u>Number and Gender</u>.  In this Agreement, the masculine, feminine or neuter gender, and the singular or plural number, shall each be deemed to include the others whenever the context so requires.

     k.    <u>Captions and Headings</u>.  The captions and headings appearing at the commencement of the sections hereof are descriptive only and for convenience in reference.

     l.    <u>Expenses</u>.  Each of the Parties shall pay all of their own costs and expenses in connection with the Action, including, but not limited to, legal fees, accounting fees, and any other costs and expenses incurred or to be incurred by it or them in negotiating and preparing this Agreement.

     m.    <u>Notices</u>.  Any and all notices and demands by any Party to any other Party, required or desired to be given hereunder shall be in writing and shall be validly given only if deposited in the United States mail, certified or registered, postage prepaid, return receipt requested, or if

232419.1                — 4 —

made by Federal Express or other delivery service which keeps records of deliveries and attempted deliveries, or if made by facsimile machine with electronic confirmation of receipt (receipt of which is acknowledged or if a copy thereof is promptly delivered by a delivery service which keeps records of deliveries and attempted deliveries). Service shall be conclusively deemed made on the first business day delivery is attempted or upon receipt, whichever is sooner, and addressed as follows:

|   |   |
|---|---|
| *To Plummers:* | McDonald Carano Wilson LLP<br>c/o Ryan J. Works, Esq.<br>2300 West Sahara Ave., Suite 1200<br>Las Vegas, Nevada 89102 |
| *To Trustee:* | Cecilia Lee, Ltd.<br>c/o Cecilia Lee, Esq.<br>448 Ridge Street<br>Reno, Nevada 89501 |

n. <u>Interpretation</u>. This Agreement is the result of negotiations among the Parties who have each negotiated and reviewed its terms. No Party shall be deemed to be the drafter for purposes of interpreting any ambiguity or uncertainty in this Agreement against that Party.

WHEREAS, this Agreement has been executed by the Parties on the Date and Year first written above.

| | |
|---|---|
| Darrell A. Plummer | Allen Dutra, Chapter 7 Trustee |
| Lisa M. Plummer | |

# EXHIBIT B

**DEPARTMENT OF THE TREASURY**
FINANCIAL MANAGEMENT SERVICE
P. O. BOX 1686
BIRMINGHAM, AL 35201-1686



**THIS IS NOT A BILL**
**PLEASE RETAIN FOR YOUR RECORDS**

06/28/13



DARRELL & LISA PLUMMER
1810 SUN SHADOW CT
RENO NV 89523-4832

As authorized by Federal law, we applied all or part of your Federal payment to a debt you owe. The government agency (or agencies) collecting your debt is listed below.

| | |
|---|---|
| Debt Management Servicing Center | TIN Num:        5884 |
| Financial Management Service | TOP Trace Num:        8802 |
| DMSC - Birmingham Office | Acct Num:        9136 |
| P. O. Box 830794 | Amount This Creditor:        $9197.00 |
| Birmingham            AL 35283-0794 | Creditor: 33        Site: 7X |
| **888-826-3127        (888) 826-3127** | |
| PURPOSE: Non-Tax Federal Debt | |

The Agency has previously sent notice to you at the last address known to the Agency. That notice explained the amount and type of debt you owe, the rights available to you, and that the Agency intended to collect the debt by intercepting any Federal payments made to you, including tax refunds. **If you believe your payment was reduced in error or if you have questions about this debt, you must contact the Agency at the address and telephone number shown above.** The U. S. Department of the Treasury's Financial Management Service cannot resolve issues regarding debts with other agencies.

We will forward the money taken from your Federal payment to the Agency to be applied to your debt balance; however, the Agency may not receive the funds for several weeks after the payment date. If you intend to contact the Agency, please have this notice available.

U. S. Department of the Treasury
Financial Management Service
(800) 304-3107
TELECOMMUNICATIONS DEVICE FOR THE DEAF (TDD) (866) 297-0517

**PAYMENT SUMMARY**
PAYEE NAME:  DARRELL & LISA PLUMMER
PAYMENT BEFORE REDUCTION:        $9197.00            PAYMENT DATE: 06/28/13
TOTAL AMOUNT OF THIS REDUCTION:        $9197.00            PAYMENT TYPE: Check
PAYING FEDERAL AGENCY: Internal Revenue Service            SPLIT REFUND CODE:
(See Insert on Tax Refund Offsets for Additional Information)

FOR OFFICIAL USE ONLY:        0000001436 09615880254855448500246312751ALTR-P01DARR001509
RL0709



**FOR JOINT TAX REFUND OFFSETS ONLY:**

Tax refunds may be offset per 26 U.S.C. Section 6402( c-f ) of the Internal Revenue Code.

If you filed a joint return and only one spouse is responsible for the debt, the spouse who isn't responsible for the debt, the "injured spouse," may be entitled to his or her share of the joint refund if he or she had income, withholdings, estimated tax payments or refundable credits. If both you and your spouse were offset for separate debts, one of you may be entitled to have more of the overpayment applied to his or her debt and/or refund.

If you lived in a community property state during the tax year, the injured spouse may be entitled to his or her share of the joint refund if he or she didn't have any income, withholdings, estimated tax payments or refundable credits. The community property states are: Arizona, California, Idaho, Louisiana, Nevada, New Mexico, Texas, Washington and Wisconsin.

The injured spouse must complete IRS Form 8379, "Injured Spouse Claim and Allocation," to get his or her share of the refund. Call the IRS at 1-800-829-3676 to request forms. If you have questions about Form 8379 or need help completing it, please call your local IRS office or 1-800-829-1040.

**MAIL THE FORM TO THE SAME IRS OFFICE WHERE YOU MAILED YOUR ORIGINAL TAX RETURN. ALLOW IRS 8 WEEKS TO PROCESS THE FORM.**



EXHIBIT C



## McDONALD·CARANO·WILSON℠

Ryan J. Works
rworks@mcdonaldcarano.com

Reply to: Las Vegas

August 21, 2013

*VIA US MAIL*

U.S. Small Business Administration
801 'R' Street, Suite 101
Fresno, CA 93721

Department of the Treasury
Financial Management Service
DMSC – Birmingham Office
P.O. Box 830794
Birmingham, AL 35283-0794

    **Re:**    *Darrell and Lisa Plummer (the "Debtors"); Chapter 7 Bankruptcy Case No.: 12-52644-btb*

To Whom It May Concern:

    As you are aware, the above captioned Debtors filed for Chapter 7 Bankruptcy relief on November 21, 2012. The filing of their bankruptcy petition triggered the "automatic stay" pursuant to 11 U.S.C. § 362(a) which prohibits creditors from taking certain acts against the Debtor or its property, including "any act to obtain possession of property of the estate or of property from the estate...."

    The tax refund that you captured and executed against was based on an obligation that pre-dated November 21, 2012 and is a pre-petition debt. *See* Enclosed. This refund belongs 11/12ths to the Plummer Bankruptcy estate and 1/12th to Mr. and Mrs. Plummer. Your pre-petition debt will be paid out, and discharged, based on your rights under Title 11 of the United States Code.

    Moreover, the creditor obligations were listed in the Debtors' Schedule F (enclosed) and therefore you were on notice of this filing. Again, you are hereby notified to immediately cease and desist from any further collection efforts against the Debtors and their property in general as you are stayed under 11 U.S.C. § 362(a). We also demand the return of the tax refund to the Chapter 7 Trustee in this matter, Mr. Allen Dutra, whose contact information is set forth below:

    Allen M. Dutra, Trustee
    59 Damonte Ranch Pkwy., Suite B299
    Reno, NV 89521
    (775) 853-8644
    amdtrustee@gmail.com

100 WEST LIBERTY ST., 10ᵀᴴ FLOOR
RENO, NEVADA 89501

P.O. BOX 2670, RENO, NEVADA 89505
775-788-2000 • FAX 775-788-2020

ATTORNEYS AT LAW



www.mcdonaldcarano.com

2300 WEST SAHARA AVENUE
SUITE 1200
LAS VEGAS, NEVADA 89102
702-873-4100
FAX 702-873-9966



McDONALD·CARANO·WILSON⁘

In re Plummer
August 21, 2013
Page 2 of 2

Thank you for your anticipated cooperation.  If you have any questions about this letter, please contact me immediately to discuss.

Sincerely,

McDONALD CARANO WILSON LLP

Ryan J. Works, Esq.

RJW/kb
Enclosure
cc:      Client
         Allen Dutra, Trustee

284940

DEPARTMENT OF THE TREASURY
FINANCIAL MANAGEMENT SERVICE
P. O. BOX 1686
BIRMINGHAM, AL  35201-1686

007709



### THIS IS NOT A BILL
### PLEASE RETAIN FOR YOUR RECORDS

06/28/13



DARRELL & LISA PLUMMER
1810 SUN SHADOW CT
RENO NV  89523-4832

096158802

As authorized by Federal law, we applied all or part of your Federal payment to a debt you owe.  The government agency (or agencies) collecting your debt is listed below.

Debt Management Servicing Center
Financial Management Service
DMSC - Birmingham Office
P. O. Box 830794
Birmingham        AL 35283-0794
888-826-3127        (888) 826-3127
PURPOSE: Non-Tax Federal Debt

TIN Num:            5884
TOP Trace Num:      8802
Acct Num:           9136
Amount This Creditor:      $9197.00
Creditor: 33    Site: 7X

The Agency has previously sent notice to you at the last address known to the Agency.  That notice explained the amount and type of debt you owe, the rights available to you, and that the Agency intended to collect the debt by intercepting any Federal payments made to you, including tax refunds. If you believe your payment was reduced in error or if you have questions about this debt, you must contact the Agency at the address and telephone number shown above. The U. S. Department of the Treasury's Financial Management Service cannot resolve issues regarding debts with other agencies.

We will forward the money taken from your Federal payment to the Agency to be applied to your debt balance; however, the Agency may not receive the funds for several weeks after the payment date.  If you intend to contact the Agency,  please have this notice available.

U. S. Department of the Treasury
Financial Management Service
(800) 304-3107
TELECOMMUNICATIONS DEVICE FOR THE DEAF (TDD) (866) 297-0517

### PAYMENT SUMMARY
PAYEE NAME:  DARRELL & LISA PLUMMER
PAYMENT BEFORE REDUCTION:        $9197.00
TOTAL AMOUNT OF THIS REDUCTION:        $9197.00
PAYING FEDERAL AGENCY: Internal Revenue Service
(See Insert on Tax Refund Offsets for Additional Information)

PAYMENT DATE: 06/28/13
PAYMENT TYPE: Check
SPLIT REFUND CODE:

FOR OFFICIAL USE ONLY:    0000001436 0961588025485544850024631275IALTR-P01DARR00L509
RL0709



**FOR JOINT TAX REFUND OFFSETS ONLY:**

Tax refunds may be offset per 26 U.S.C. Section 6402( c-f ) of the Internal Revenue Code.

If you filed a joint return and only one spouse is responsible for the debt, the spouse who isn't responsible for the debt, the "injured spouse," may be entitled to his or her share of the joint refund if he or she had income, withholdings, estimated tax payments or refundable credits. If both you and your spouse were offset for separate debts, one of you may be entitled to have more of the overpayment applied to his or her debt and/or refund.

If you lived in a community property state during the tax year, the injured spouse may be entitled to his or her share of the joint refund if he or she didn't have any income, withholdings, estimated tax payments or refundable credits. The community property states are: Arizona, California, Idaho, Louisiana, Nevada, New Mexico, Texas, Washington and Wisconsin.

The injured spouse must complete IRS Form 8379, "Injured Spouse Claim and Allocation," to get his or her share of the refund. Call the IRS at 1-800-829-3676 to request forms. If you have questions about Form 8379 or need help completing it, please call your local IRS office or 1-800-829-1040.

**MAIL THE FORM TO THE SAME IRS OFFICE WHERE YOU MAILED YOUR ORIGINAL TAX RETURN. ALLOW IRS 8 WEEKS TO PROCESS THE FORM.**



B6F (Official Form 6F) (12/07)

In re  **Darrell Plummer,**
　　　 **Lisa Michelle Plummer**　　　　　　　　　　　　　　　　 Case No. _____
　　　　　　　　　　　　　　　　　　　　　　　　　　　,
　　　　　　　　　　　　　　　　　Debtors

# SCHEDULE F - CREDITORS HOLDING UNSECURED NONPRIORITY CLAIMS

State the name, mailing address, including zip code, and last four digits of any account number, of all entities holding unsecured claims without priority against the debtor or the property of the debtor, as of the date of filing of the petition. The complete account number of any account the debtor has with the creditor is useful to the trustee and the creditor and may be provided if the debtor chooses to do so. If a minor child is a creditor, state the child's initials and the name and address of the child's parent or guardian, such as "A.B., a minor child, by John Doe, guardian." Do not disclose the child's name. See, 11 U.S.C. §112 and Fed. R. Bankr. P  1007(m). Do not include claims listed in Schedules D and E. If all creditors will not fit on this page, use the continuation sheet provided.

If any entity other than a spouse in a joint case may be jointly liable on a claim, place an "X" in the column labeled "Codebtor," include the entity on the appropriate schedule of creditors, and complete Schedule H - Codebtors. If a joint petition is filed, state whether the husband, wife, both of them, or the marital community may be liable on each claim by placing an "H," "W," "J," or "C" in the column labeled "Husband, Wife, Joint, or Community."

If the claim is contingent, place an "X" in the column labeled "Contingent." If the claim is unliquidated, place an "X" in the column labeled "Unliquidated." If the claim is disputed, place an "X" in the column labeled "Disputed." (You may need to place an "X" in more than one of these three columns.)

Report the total of all claims listed on this schedule in the box labeled "Total" on the last sheet of the completed schedule. Report this total also on the Summary of Schedules and, if the debtor is an individual with primarily consumer debts, report this total also on the Statistical Summary of Certain Liabilities and Related Data.

☐  Check this box if debtor has no creditors holding unsecured claims to report on this Schedule F.

| CREDITOR'S NAME, MAILING ADDRESS INCLUDING ZIP CODE, AND ACCOUNT NUMBER (See instructions above.) | CODEBTOR | Husband, Wife, Joint, or Community | | DATE CLAIM WAS INCURRED AND CONSIDERATION FOR CLAIM. IF CLAIM IS SUBJECT TO SETOFF, SO STATE. | CONTINGENT | UNLIQUIDATED | DISPUTED | AMOUNT OF CLAIM |
|---|---|---|---|---|---|---|---|---|
| | | H W J C | | | | | | |
| Account No. x-x3001 <br><br> **American Express** <br> **Box 0001** <br> **Los Angeles, CA 90096** | | W | | Credit card purchases | | | | 1,955.83 |
| Account No. xxxxxxxxxxxx4088 <br><br> **ARS National Services, Inc.** <br> **PO Box 469048** <br> **Escondido, CA 92046-9048** | | H | | Credit card purchases | | | | 30,882.96 |
| Account No. <br><br> **Bank of America** <br> **PO BOX 15026** <br> **Wilmington, DE 19850-5026** | | W | | Credit card purchases | | | | 3,000.00 |
| Account No. xxxxxx xx xV012 <br><br> **BRER Affiliates LLC fka PREA, Inc.** <br> **c/o Patricia M. Mansur-Brown, Esq.** <br> **Vice President/GC Prudential** <br> **Corporate** <br> **3333 Michelson Drive, Suite 1000** <br> **Irvine, CA 92612** | | C | | Personal Guarantee of Franchise Fees/Settlement Agreement | X | X | | 33,000.00 |
| | | | | Subtotal <br> (Total of this page) | | | | 68,838.79 |

　**6**　 continuation sheets attached

Software Copyright (c) 1996-2011 - CCH INCORPORATED - www.bestcase.com　　　　　　　　　　　　　S/N:26281-111107　　Best Case Bankruptcy

B6F (Official Form 6F) (12/07) - Cont.

In re    **Darrell Plummer,**
**Lisa Michelle Plummer**

Case No. _____

Debtors

# SCHEDULE F - CREDITORS HOLDING UNSECURED NONPRIORITY CLAIMS
### (Continuation Sheet)

| CREDITOR'S NAME, MAILING ADDRESS INCLUDING ZIP CODE, AND ACCOUNT NUMBER (See instructions above.) | C O D E B T O R | H W J C | DATE CLAIM WAS INCURRED AND CONSIDERATION FOR CLAIM. IF CLAIM IS SUBJECT TO SETOFF, SO STATE. | C O N T I N G E N T | U N L I Q U I D A T E D | D I S P U T E D | AMOUNT OF CLAIM |
|---|---|---|---|---|---|---|---|
| Account No. xxxx-xxxx-xxxx-0476 <br><br> Capital One Bank (USA), N.A. <br> PO BOX 60599 <br> City Of Industry, CA 91716-0599 | | H | Credit card purchases | | | | 24,367.19 |
| Account No. xxxx-xxxx-xxxx-7106 <br><br> Capital One Bank (USA), N.A. <br> PO BOX 60599 <br> City Of Industry, CA 91716-0599 | | H | Credit card purchases | | | | 14.37 |
| Account No. xxxxxxxxxxxx1529 <br><br> Chase <br> PO BOX 94014 <br> Palatine, IL 60094-4014 | | W | Credit card purchases | | | | 8,471.00 |
| Account No. xxxxxxxxxxxx6050 <br><br> Chase <br> PO BOX 94014 <br> Palatine, IL 60094-4014 | | W | Credit card purchases | | | | 8,222.00 |
| Account No. xxxxxxxxxxxx9210 <br><br> Chase <br> PO BOX 94014 <br> Palatine, IL 60094-4014 | | W | Credit card purchases | | | | 8,307.00 |

Sheet no. __1__ of __6__ sheets attached to Schedule of Creditors Holding Unsecured Nonpriority Claims

Subtotal (Total of this page)        49,381.56

B6F (Official Form 6F) (12/07) - Cont.

In re   **Darrell Plummer,**
      **Lisa Michelle Plummer**

Case No. _____

Debtors

# SCHEDULE F - CREDITORS HOLDING UNSECURED NONPRIORITY CLAIMS
### (Continuation Sheet)

| CREDITOR'S NAME, MAILING ADDRESS INCLUDING ZIP CODE, AND ACCOUNT NUMBER (See instructions above.) | CODEBTOR | Husband, Wife, Joint, or Community | | | DATE CLAIM WAS INCURRED AND CONSIDERATION FOR CLAIM. IF CLAIM IS SUBJECT TO SETOFF, SO STATE. | CONTINGENT | UNLIQUIDATED | DISPUTED | AMOUNT OF CLAIM |
| --- | --- | --- | --- | --- | --- | --- | --- | --- | --- |
| | | H | W | JC | | | | | |
| Account No. | | | | | New Jersey Judgment for default of persaonal guarantee of copy machine lease | | | | |
| DeLage Landen Leasing Services 1111 Old Eagle School Road Wayne, PA 19087 | C | | | | | | | | 96,771.00 |
| Account No. xxxxxxx6541 | | | | | Credit card purchases | | | | |
| Department Stores National Bank (DSNB) c/o United Collection Bureau Inc. PO Box. 1448 Maumee, OH 43537 | | | W | | | | | | 433.45 |
| Account No. xxxxxxxxxxxx6781 | | | | | Credit card purchases | | | | |
| Discover Card P.O. Box 6103 Carol Stream, IL 60197-6103 | C | | | | | | | | Unknown |
| Account No. xxxx xx. xxxx6049 | | | | | July 2012 Purchase money loan for residential lot Parcel # 23260305; 8220 Standing Stone Court, Reno, NV 89523; Foreclosure and Deficiency Judgment/Writ of Garnishment | | | X | |
| First Independent Bank of Nevada P.O. Box 11100 Reno, NV 89510 | C | | | | | | | | 137,555.32 |
| Account No. xxxx1847 | | | | | Overdraft Protection | | | | |
| First Independent Bank of Nevada P.O. Box 11100 Reno, NV 89510 | C | | | | | | | | 80.47 |

Sheet no. __2__ of __6__ sheets attached to Schedule of Creditors Holding Unsecured Nonpriority Claims

Subtotal
(Total of this page)      **234,840.24**

Software Copyright (c) 1996-2011 - CCH INCORPORATED - www.bestcase.com

Best Case Bankruptcy

B6F (Official Form 6F) (12/07) - Cont.

In re    **Darrell Plummer,**                                      Case No. _____
         **Lisa Michelle Plummer**
_____
                                    Debtors

# SCHEDULE F - CREDITORS HOLDING UNSECURED NONPRIORITY CLAIMS
### (Continuation Sheet)

| CREDITOR'S NAME, MAILING ADDRESS INCLUDING ZIP CODE, AND ACCOUNT NUMBER (See instructions above.) | C O D E B T O R | Husband, Wife, Joint, or Community | | DATE CLAIM WAS INCURRED AND CONSIDERATION FOR CLAIM. IF CLAIM IS SUBJECT TO SETOFF, SO STATE. | C O N T I N G E N T | U N L I Q U I D A T E D | D I S P U T E D | AMOUNT OF CLAIM |
|---|---|---|---|---|---|---|---|---|
| | | H W | J C | | | | | |
| Account No. xxxx1656 | | | | Credit card purchases | | | | |
| **GE Money Bank** c/o Client Services Inc. 3451 Harry S. Truman Blvd. Saint Charles, MO 63301-4047 | | W | | | | | | 427.97 |
| Account No. | | | | Note Payable | | | | |
| **Hal Plummer** 611 Aberdeen Ct. Reno, NV 89521 | | C | | | | | | 67,900.00 |
| Account No. xxxx xx. xxxx-x0828; xept. 4 | | | | June of 2012 Settlement Agreement | | | | |
| **Hillcrest Management Company, LLC** c/o Karl Y. Olsen, Esq. Parsons Behle & Latimer Reno, NV 89501 | X | C | | | X | X | X | 12,000.00 |
| Account No. | | | | Legal Fees | | | | |
| **Kevin Darby** 4777 Caughlin Parkway Reno, NV 89519 | | C | | | | | | 4,300.00 |
| Account No. xxxx-xxxx-xxxx-9210 | | | | Credit card purchases | | | | |
| **MRS Associates** 1930 Olney Avenue Cherry Hill, NJ 08003 | | W | | | | | | 7,775.57 |

Sheet no. __3__ of __6__ sheets attached to Schedule of Creditors Holding Unsecured Nonpriority Claims

Subtotal (Total of this page) — 92,403.54

B6F (Official Form 6F) (12/07) - Cont.

In re    **Darrell Plummer,**
      **Lisa Michelle Plummer**

Case No. _____

Debtors

# SCHEDULE F - CREDITORS HOLDING UNSECURED NONPRIORITY CLAIMS
### (Continuation Sheet)

| CREDITOR'S NAME, MAILING ADDRESS INCLUDING ZIP CODE, AND ACCOUNT NUMBER (See instructions above.) | CODEBTOR | Husband, Wife, Joint, or Community | | DATE CLAIM WAS INCURRED AND CONSIDERATION FOR CLAIM.  IF CLAIM IS SUBJECT TO SETOFF, SO STATE. | CONTINGENT | UNLIQUIDATED | DISPUTED | AMOUNT OF CLAIM |
|---|---|---|---|---|---|---|---|---|
| | | H W J C | | | | | | |
| Account No. xxxx-xxxx-xxxx-1529 <br><br> NCO Financial Systems, Inc. <br> PO Box 15081 <br> Wilmington, DE 19850-5081 | | W | | Credit card purchases | | | | 9,477.34 |
| Account No. <br><br> Nevada Eye Cnsultants <br> 5420 Kietzke Lane, Suite 103 <br> Reno, NV 89511 | | H | | Medical services | | | | 849.32 |
| Account No. xxxxx2-12R <br><br> REMSA <br> 450 Edison Way <br> Reno, NV 89502-4117 | | H | | Medical services | | | | 641.80 |
| Account No. xxxxxx4867 <br><br> Renown Regional Medical Center <br> 1155 Mill Street <br> Reno, NV 89502 | | H | | Medical services | X | X | X | 324.00 |
| Account No. xx6168 <br><br> Sierra Anesthesia | | C | | Medical services | | | | 118.56 |

Sheet no. __4__ of __6__ sheets attached to Schedule of
Creditors Holding Unsecured Nonpriority Claims

Subtotal
(Total of this page)

11,411.02

B6F (Official Form 6F) (12/07) - Cont.

In re    **Darrell Plummer,**
         **Lisa Michelle Plummer**                                    Case No. _____
                                   Debtors

# SCHEDULE F - CREDITORS HOLDING UNSECURED NONPRIORITY CLAIMS
### (Continuation Sheet)

| CREDITOR'S NAME, MAILING ADDRESS INCLUDING ZIP CODE, AND ACCOUNT NUMBER (See instructions above.) | C O D E B T O R | H W J C | DATE CLAIM WAS INCURRED AND CONSIDERATION FOR CLAIM. IF CLAIM IS SUBJECT TO SETOFF, SO STATE. | C O N T I N G E N T | U N L I Q U I D A T E D | D I S P U T E D | AMOUNT OF CLAIM |
|---|---|---|---|---|---|---|---|
| Account No. xxxxxxxxxxxx4088 | | | Credit card purchases | | | | |
| **Southwest Chase Visa** **P.O. Box 15298** **Wilmington, DE 19850** | | H | | | | | 13,717.47 |
| Account No. xxxxx0213 | | | Medical services | | | | |
| **St. Mary's Regional Medical Center** | | C | | | | | 199.89 |
| Account No. 4802 | | | Medical services | | | | |
| **Summit Surgery Center** **Lockbox LA 23552** **Pasadena, CA 91185-3552** | | H | | | | | 466.18 |
| Account No. | | | Guarantee of Junior Lien/Mortgage on GDP Investments LLC commercial office building located in Sparks, NV - Deficiency Claim from Foreclosure by first mortgage in 2012 | | | | |
| **U.S. Small Business Administration** **801 'R' Street Suite 101** **Fresno, CA 93721** | X | C | | X | X | | 487,052.13 |
| Account No. | | | Personal Guarantee of Junior Lien/Mortgage on Jumpstart Investments LLC commercial office building located at 16500 Wedge Parkway. Reno, NV 89511-deficiency claim from foreclosure by first morgage in 2012 | | | | |
| **U.S. Small Business Administration** **801 'R' Street Suite 101** **Fresno, CA 93721** | X | C | | X | X | X | 454,766.00 |

Sheet no. __5__ of __6__ sheets attached to Schedule of
Creditors Holding Unsecured Nonpriority Claims

| | | |
|---|---|---|
| Subtotal (Total of this page) | | 956,201.67 |

Software Copyright (c) 1996-2011 - CCH INCORPORATED - www.bestcase.com                          Best Case Bankruptcy

Case 12-52644    Doc 1    Entered 11/21/12 10:06:36    Page 30 of 53

B6F (Official Form 6F) (12/07) - Cont.

In re  **Darrell Plummer,**
    **Lisa Michelle Plummer**

Case No. _____

                   Debtors

## SCHEDULE F - CREDITORS HOLDING UNSECURED NONPRIORITY CLAIMS
### (Continuation Sheet)

| CREDITOR'S NAME, MAILING ADDRESS INCLUDING ZIP CODE, AND ACCOUNT NUMBER (See instructions above.) | C O D E B T O R | H W J C | DATE CLAIM WAS INCURRED AND CONSIDERATION FOR CLAIM. IF CLAIM IS SUBJECT TO SETOFF, SO STATE. | C O N T I N G E N T | U N L I Q U I D A T E D | D I S P U T E D | AMOUNT OF CLAIM |
|---|---|---|---|---|---|---|---|
| Account No. xxxx-xxxx-xxxx-2241 | | | Business Line of Credit | | | | |
| **Wells Fargo Bank N.A.** c/o Adrienne Hill or Tina Valenzuela 200 South Virginia Street Reno, NV 89501 | X | C | | | | | 98,000.00 |
| Account No. | | | | | | | |
| Account No. | | | | | | | |
| Account No. | | | | | | | |
| Account No. | | | | | | | |

Sheet no. __6__ of __6__ sheets attached to Schedule of Creditors Holding Unsecured Nonpriority Claims

| | |
|---|---|
| Subtotal (Total of this page) | 98,000.00 |
| Total (Report on Summary of Schedules) | 1,511,076.82 |